Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, March 18, 2011 1:23:26 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAT J. HERLAN, | ) | Case No. 09-2615 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| TIMBERLINE FOUR SEASONS | ) | |
| RESORT, INC., and LONG RUN | ) | |
| REALTY, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Proc. No. 09-120 |
| v. | ) | |
| | ) | |
| PAT J. HERLAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Timberline Four Seasons Resort and Long Run Realty, Inc. (collectively "Timberline"), filed this adversary complaint against Pat J. Herlan (the "Debtor") alleging seven causes of action, including causes of action to except debts from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(4) and (6). Both parties seek summary judgment on whether the Debtor's alleged obligations to Timberline fall within the §§ 523(a)(4) and (6) exceptions to discharge.

For the reasons stated herein, the court will grant the Debtor's motion for summary judgment and deny Timberline's motion for summary judgment.

Page 1 of 10

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

Both parties state that all the facts necessary to adjudicate their motions for summary judgment can be garnered from the decision of the Supreme Court of Appeals for West Virginia in *Timberline Four Seasons Resort Mgmt. Co. v. Herlan*, 679 S.E.2d 329 (W. Va. 2009):

> Timberline Four Seasons is a family-owned four seasons resort. Pat Herlan was hired by Timberline Four Seasons in 1991. She provided real estate brokerage services for Timberline Four Seasons' real estate division until January, 2007. At the time Ms. Herlan was first hired, no written contract of employment was entered into between the parties. However, from May 1994 to May 1996, a written agreement existed between the parties. This was the only written agreement between them. Upon the expiration of the 1996 contract, no further written agreement was ever put in place. Sometime in 2000, Ms. Herlan incorporated Timberline Resort Realty, Inc.

and Timberline Realty, Inc.

During her time with Timberline Four Seasons, Ms. Herlan was paid a salary and she received a W-2. . . .

Ms. Herlan's employment continued until early 2007, whereupon she was asked to vacate the Roundhouse. Upon her departure, Ms. Herlan removed certain business records that Appellants claim are vital to the continued operation of its real estate division. Ms. Herlan also hired a computer technician to remove and/or delete certain information from computer software located on the premises and to move such information to her new location. The cost of erasing and moving this data was approximately $ 25,000.00. In addition to tangible and electronic records, Ms. Herlan also had the telephone numbers for the Roundhouse moved to her new location. However, computer hardware, the server, accounting records, and blank computer software were left at the Roundhouse. There is no dispute that Timberline Four Seasons owns those items, which were utilized by Ms. Herlan throughout her employment.

Shortly following Ms. Herlan's departure from the Roundhouse, Appellants filed a Petition for Injunctive Relief in the Circuit Court of Tucker County, West Virginia, on June 24, 2007. . . . The circuit court entered its Findings of Fact and Conclusions of Law on July 6, 2007, and denied the petition for injunctive relief. Specifically, the circuit court found that Timberline Resort Realty was not owned or controlled by Timberline Four Seasons, and thus, it was not an agent under the exclusive control of Timberline Four Seasons with respect to the real estate functions performed by Pat Herlan d.b.a. Timberline Resort Realty. Appellants filed a Motion for a New Trial on July 18, 2007. Thereafter, on July 31, 2007, the circuit court denied Appellant's motion, whereupon Appellants filed a Petition for Appeal with this Court.

. . . .

We find that Appellants presented sufficient evidence demonstrating that Timberline Four Seasons retained some degree of control over the manner in which Ms. Herlan performed her obligations.

. . . .

First, Timberline Four Seasons selected and has engaged Ms. Herlan in some form of employment capacity since 1991. Second, it is undisputed that Timberline Four Seasons paid Ms. Herlan for her services. Third, Timberline Four Seasons had the power of dismissal, and this is evidenced by the fact that it terminated the employment relationship with Ms. Herlan in early 2007. . . .

. . . .

[Fourth], Timberline Four Seasons exercised some level of control over the finances, payroll, accounting, taxes and employees of Ms. Herlan and Timberline Resort Realty. Appellants sufficiently demonstrated that the real estate operation did not operate independently of Timberline Four Seasons. Rather, it was treated as a division of Timberline Four Seasons. [A]ppellants presented this evidence to the

> circuit court, and thus met their burden of proving that an agency relationship existed
> . . . .
>
> . . . .
>
> Furthermore, the records at issue were primarily obtained pursuant to Ms. Herlan's agency relationship with Timberline Four Seasons. Thus, Ms. Herlan's retention of the business records was not justified in the law. Accordingly, because the specific facts of this case indicate that an agency relationship existed between the parties, we find that Ms. Herlan owed a duty of loyalty to her principal, Timberline Four Seasons, to leave these records and materials at the Roundhouse upon her departure. Ms. Herlan, as an agent, cannot rightfully use her position to engage in self-dealing at the expense of her principal. . . .

*Id.* at 332-33, 335, 337, 338.

### III. DISCUSSION

Based on the facts as recited by the Supreme Court of Appeals, both parties seek entry of summary judgment on whether any debt owed by the Debtor to Timberline is excepted from her Chapter 7 discharge under 11 U.S.C. § 523(a)(4) or (6).

**A.    Defalcation While Acting in a Fiduciary Capacity – § 523(a)(4)**

Timberline asserts that the Supreme Court of Appeals determined that the Debtor violated her fiduciary duties to Timberline by misappropriating property while acting as its agent. The Debtor contends that she was not acting in a "fiduciary capacity" as required by 11 U.S.C. § 523(a)(4).

Section 523(a)(4) of the Bankruptcy Code provides that a Chapter 7 discharge "does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity . . . ." To prevail on a § 523(a)(4) claim, the movant must establish, by a preponderance of the evidence, the existence of both: (A) a fiduciary relationship and (B) a defalcation while acting in that fiduciary capacity. *E.g.*, *Grogan v. Garner*, 498 U.S. 279, 282-83, (1991) (applying a preponderance of the evidence standard to § 523(a) causes of action); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996) ("[U]nder § 523(a)(4), Fowler Brothers had to establish the following two elements to prevent the discharge of Mr. Young's debt: a fiduciary relationship between Fowler Brothers and Mr. Young and fraud or defalcation committed by Mr. Young in the course of that fiduciary relationship."). Because this exception to discharge contravenes the "fresh start" policy of the Bankruptcy Code, it is construed narrowly in favor of the debtor. *E.g.*, *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997)

("[E]xceptions to discharge are to be strictly construed in favor of the debtor."); *Centra Bank, Inc. v. Burton (In re Burton)*, 416 B.R. 539, 542 (Bankr. N.D.W. Va. 2009) (same).

Regarding the existence of a fiduciary relationship, the definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law. *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *7 (4th Cir. March 19, 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)). Although controlled by federal common law, "'the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship for purposes of section 523(a)(4).'" *Burton*, 416 B.R. at 543 (quoting 4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2009). Thus, certain fiduciary relationships exist that are determined to be so special that they fall within the meaning of "fiduciary" in § 523(a)(4) despite the absence of an express trust or other actual, preexisting notice to the debtor that he is holding property in trust for another. *Id.* These relationships have included an ambassador and the property of the ambassador's represented country, *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001), a financial advisor committing fraud and found to be a fiduciary by default in a state court judgment, *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir. 1997), real estate agents handling closing funds, *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954), attorneys handling client funds, *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162 (2d Cir. 1999), a corporate officer and director mishandling corporate funds, *Burton*, 416 B.R. at 546, and those acting under a power of attorney to an incompetent person, *Ostrum v. Porter*, No. 03-118; 2008 Bankr. LEXIS 109 (Bankr. N.D.W. Va. Jan. 10, 2008). As stated in *Hamby*, 217 F.2d at 80, the term fiduciary in § 523(a)(4) encompasses those in a common law fiduciary relationship that have been entrusted with funds such that the relationship between the parties is more than merely debtor-creditor.

In examining the scope of an agent's duty to her principal,[1] the Supreme Court of Appeals

---

[1] In examining the Debtor's relationship to Timberline, the Supreme Court of appeals determined that the Debtor was Timberline's agent. An agent is different from an employee because "[a]n agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons; while a servant or employee is one engaged, not in creating contractual obligations, but in rendering service, chiefly with reference to things

for West Virginia has stated that "[i]n the conduct of his principal's business an agent is held to the utmost good faith, and will not be allowed to use his principal's property for his own advantage, or to derive secret profits or advantages to himself by reason of the relation of principal and agent existing between him and his principal." Syllabus Pt. 6, *Timberline Four Seasons Resort Mgmt. Co.*, 679 S.E.2d 329. The Supreme Court of Appeals has also stated – in a broad sense – that an agent's duty to her principal encompasses fiduciary obligations:

> In a broader sense, agency means a "fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Restatement (Second) of Agency* § 1 at 7 (1957).

*Cole v. Fairchild*, 482 S.E.2d 913, 923 (W. Va. 1996).[2]

Even though state law may impose fiduciary obligations on agents, under the federal common law, an agency relationship by itself is generally not sufficient to satisfy the fiduciary capacity requirement of 11 U.S.C. § 523(a)(4):

> The second point is, whether a factor, who retains the money of his principal, is a fiduciary debtor within the act.
>
> If the [exception to discharge for defalcation] embrace[s] such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the [exception to discharge for defalcation].
>
> The cases enumerated, "the defalcation of a public officer," "executor," "administrator," "guardian," or "trustee," are not cases of implied but special trusts, and the "other fiduciary capacity" mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.

---

but sometimes with reference to persons when no contractual obligation is to result." Syllabus Pt. 3, *Timberline Four Seasons Resort Mgmt. Co.*, 679 S.E.2d 329.

[2] Not a single time in the Supreme Court of Appeals's opinion, *Timberline Four Seasons Resort Mgmt. Co.*, 679 S.E.2d 329, did the Court use the word "fiduciary" to describe the Debtor's duty to Timberline.

> A factor is not, therefore, within the [defalcation exception] . . . .
>
> In answer to the second question, then, we say, that a factor, who owes his principal money received on the sale of his goods, is not a fiduciary debtor within the meaning of the act.

*Chapman v. Forsyth*, 43 U.S. 202, 208 (1844); *see also Chi. Midwest Credit Serv. Corp. v. Trovato*, 145 B.R. 575, 581 (Bankr. N.D. Ill. 1991) ("Agency is not the kind of 'fiduciary capacity' that gives rise to nondischargeability under Section 523(a)(4) of the Code.").

Not all agents, however, are excluded as fiduciaries under 11 U.S.C. § 523(a)(4). For example, in *Hamby*, 217 F.2d at 80, the Court of Appeals for the Fourth Circuit held that a real estate agent's obligations were excepted from discharge under the predecessor statute to § 523(a)(4) when the real estate agent misappropriated closing funds entrusted to the agent by the principal for a specific purpose. The Court reasoned that the facts of the case were not akin to that of "a commission merchant or broker, where the principal agrees that his property be sold and a mere debtor-creditor relationship be created as to the proceeds." *Id.* In the view of the Fourth Circuit, "[n]ot all agents act in a fiduciary capacity; but, certainly, an agent is acting in such capacity when he is handling funds that have been entrusted to him to be applied to a specific purpose. *Id.; see also Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997) ("The bankruptcy court found – correctly – that Niles collected rents for the Ottos in her capacity as a licensed real estate broker, and was required either to pay those funds directly to the Ottos or to hold them in a trust fund account in accordance with the Ottos' instructions, she was the trustee of an express trust.").

According to the facts recited by the Supreme Court of Appeals, the Debtor was not entrusted to transfer Timberline's money or property to a third party for a specific purpose. Instead, in the scope of her duties as Timberline's agent, she held Timberline's business records, computer software information, and telephone numbers, and when Timberline terminated her agency relationship, she did not return those items to Timberline. In this court's view, these facts are more akin to those in *Chapman*, *supra*, where the principal delivered 150 bales of cotton to the factor for the factor to sell, but the factor never gave the proceeds from the sale to the principal. Because the Debtor merely failed to return her principal's property on the termination of her agency relationship, the Debtor was not acting in a "fiduciary capacity" as contemplated by 11 U.S.C. § 523(a)(4). *See, e.g.*, *Williams*

*v. Lobato (In re Lobato)*, No. 07-1071, 2008 Bankr. LEXIS 4589 at *17 (Bankr. D.N.M. Nov. 4, 2008) ("[W]hen a fiduciary duty under 11 U.S.C. §523(a)(4) is found, the cases universally find a much more specific basis for the duty than those general duties of good faith and fair dealing."); *Horejs v. Steele (In re Steele)*, 292 B.R. 422, 433 (Bankr. D. Colo. 2003) ("[E]ven in those cases, where an agent . . . holds identifiable property of another and is bound to return that property under his agreement, there is no trust relationship that operates to except those debts from discharge. It takes more than identifiable property, and a legal obligation to return it, to create fiduciary obligations under § 523(a)(4).").[3]

**B.   Willful and Malicious Injury**

The Debtor asserts that any obligation owed to Timberline cannot be excepted from her Chapter 7 discharge on the grounds that when she took Timberline's business records, computer software, and telephone numbers, she believed that she had a legal right to those items, as upheld by the Circuit Court before being reversed by the Supreme Court of Appeals.

Section 523(a)(6) of the Code provides that a discharge in bankruptcy does not apply to any debts that arise from the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The test is conjunctive; thus, a willful injury by itself is insufficient to support a cause of action unless the act was also done maliciously. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991). Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable. *Kawaauhau v. Geiger*, 523 U.S. 57, 60 (1998). As stated by the Court of Appeals for the Fourth Circuit:

---

[3] At an earlier stage of this case, the Debtor and Timberline litigated whether the Debtor's bankruptcy estate included certain vacation home rental contracts, or whether those contracts were subject to a constructive trust – meaning that the contracts were not part of the Debtor's bankruptcy estate under 11 U.S.C. § 541(d). A constructive trust cannot create a fiduciary relationship of the type described in § 523(a)(4). *E.g.*, *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, No. 98-1728, 1999 U.S. App. LEXIS 4743 at *8 (4th Cir. March 19, 1999) ("The trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds; 'constructive trusts or trusts ex malificio thus . . . fall short of the requirements of § 523(a)(4).'" (quoting *Tran v. Texas Lottery Commission (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998)).

> [Section] 523(a)(6) applies only to "acts done with actual intent to cause injury." Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the debtor's act. More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or are substantially certain to occur. *Barclays American/Business Credit., Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting the definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)). For an act to be "malicious," the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881. A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004). "The focus is on the debtor's state of mind at the time the injurious action is taken." *Hughes v. Arnold*, 393 B.R. 712, 718 (E.D. Cal. 2008), *aff'd* 347 Fed. Appx. 359 (9th Cir. 2009).

In this case, the facts as recited by the Supreme Court of Appeals fall short of establishing that the Debtor acted willfully and maliciously in failing to return Timberline's property. The Debtor's employment with Timberline continued to early 2007, whereupon she was asked to vacate the Roundhouse. The Debtor then removed certain business records, computer software, and telephone numbers. At the time she took the records, software and telephone numbers, the Debtor believed that she was entitled to keep them. In fact, the Debtor was operating under what she believed to be the law in West Virginia, W. Va. Code §§ 47-12-1 and 47-12-4, which, in her view, prohibited her from turning over records to a non-broker such as Timberline. On June 24, 2007, Timberline filed a petition for injunctive relief in the Circuit Court to regain the items removed by the Debtor. Following a trial, the Circuit Court denied the petition for injunctive relief finding that no agency relationship existed, and, consequently, the Debtor was entitled to the items that she took.

Because the Debtor herself believed that she was entitled to retain the business records, computer software, and telephone numbers at the time she took them, and because this belief was

sanctioned by the Circuit Court, this court cannot find that the Debtor had an actual intent to cause injury to Timberline by targeting it in a financial sense at the time she undertook the (ultimately) wrongful removal.

## IV. CONCLUSION

For the above stated reasons, the court will grant the Debtor's motion for summary judgment and deny Timberline's motion for summary judgment. The court will enter a separate order pursuant to Fed. R. Bankr. P. 7058.[4]

---

[4] In the Debtor's motion for summary judgment, the Debtor asks the court to find that no larceny or embezzlement occurred within the meaning of 11 U.S.C. § 523(a)(4). Timberline's Amended Complaint, however, only references § 523(a)(4) based in its exception for "fraud or defalcation while acting in a fiduciary capacity." The amended complaint never mentions larceny or embezzlement as a basis for relief under § 523(a)(4). (Document No. 34, p.6). Consequently, no cause of action for larceny or embezzlement exists for the court to adjudicate.